1  Richard R. Rudnansky (SBN: 77981)
   rrudnansky@meyersnave.com
2  Julia L. Bond (SBN: 166587)
   jbond@meyersnave.com
3  Dawn A. McIntosh (SBN: 162713)
   dmcintosh@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California  94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Attorneys for Defendants CITY OF COTATI and
   PLANNING COMMISSION OF THE CITY OF
8  COTATI

9
                    **UNITED STATES DISTRICT COURT**
10
                   **NORTHERN DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| MICHAEL MEAD, an individual, | CASE NO. CV 08 3585 CW |
| Plaintiff, | **REVISED REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS MOTION TO DISMISS; EXHIBITS D-E IN SUPPORT THEREOF** |
| v. | |
| CITY OF COTATI, a municipal corporation, PLANNING COMMISSION OF THE CITY OF COTATI, UNITED STATES FISH AND WILDLIFE SERVICE, DONALD KOCH, in his official capacity as Director of the California Department of Fish and Game, Does 1-10, inclusive, | Date:   October 9, 2008<br>Time:   2:00 p.m.<br>Crtrm.:  2 |
| Defendant. | Trial Date:           None Set |

                                                                CV 08 3585 CW
REVISED RFJN RE CITY'S MOTION TO DISMISS; EXHIBITS D-E

1  TO:  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        Defendants City of Cotati and Planning Commission of the City of Cotati (collectively "the

3  City defendants") hereby request that the two letters from the United States Fish & Wildlife

4  Service attached as Exhibits D and E to the City defendants' Request for Judicial Notice submitted

5  in support of the City's Notice of Motion and Motion to Dismiss be replaced with the signed

6  versions submitted herewith.  Federal Rules of Evidence, Rule 201(d).  These two letters are

7  identical to the letters submitted with the original Request for Judicial Notice.

8        Exhibit D          Letter from the U.S. Department of Interior, Fish and Wildlife Service, to

9                          Derek Marshall, BioConsultant LLC (Mead project) dated August 31, 2005

10       Exhibit E          Letter from the U.S. Department of Interior, Fish and Wildlife Service, to

11                          Wendy Mountain dated October 14, 2005

12

13

14  DATED: August 21, 2008                    MEYERS, NAVE, RIBACK, SILVER & WILSON

15

16                                      By:      /s/ Dawn A. McIntosh
                                             Dawn A. McIntosh
17                                           Attorneys for Defendants CITY OF COTATI and
                                             PLANNING COMMISSION OF THE CITY OF
18       1138769.1                           COTATI

19

20

21

22

23

24

25

26

27

28

REVISED RFJN RE CITY'S MOTION TO DISMISS; EXHIBITS A-G

# EXHIBIT D



# United States Department of the Interior
### FISH AND WILDLIFE SERVICE
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, California 95825-1846



IN REPLY REFER TO:
1-1-04-TA-2053

AUG 3 1 2005

Mr. Derek Marshall
BioConsultant LLC
122 Calistoga Rd. #360
Santa Rosa, CA 95409

Subject:     California Tiger Salamander Site Assessment for the Mead Project at Lund
             Hill Drive, Cotati, Sonoma County, California

Dear Mr. Marshall:

This letter is in response to your April 19, 2004, request to the U.S. Fish and Wildlife Service
(Service) for a "no effect" determination for the Mead project located at Lund Hill Drive in
Cotati, Sonoma County, California. At issue are the potential effects to the endangered Sonoma
County distinct population segment of the California tiger salamander (*Ambystoma californiense*)
(tiger salamander). Your letter was received in our office on May 27, 2004, and we received
additional information on the location of the project on July 13, 2005. This response is provided
in accordance with the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 *et seq.*).

Section 9 of the Act and its implementing regulations prohibit the "take" of any federally listed
animal species by any person subject to the jurisdiction of the United States without a special
exemption. Take is defined by the Act as "...to harass, harm, pursue, hunt, shoot, wound, kill,
trap, capture, or collect, or attempt to engage in any such conduct" of any listed wildlife species.
"Harm" in this definition includes significant habitat modification or degradation where it
actually kills or injures wildlife, by significantly impairing essential behavior patterns, including
breeding, feeding, or sheltering (50 CFR 17.3). "Harass" means an intentional or negligent act or
omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to
disrupt normal behavioral patterns which include, but are not limited to breeding, feeding, or
sheltering.

Take incidental to an otherwise lawful activity may be authorized by one of two procedures.
If a Federal agency is involved with the permitting, funding, or carrying out of this project,
and a listed species is going to be adversely affected, then initiation of consultation between
that agency and the Service pursuant to section 7 of the Act is required. Such consultation
would result in a biological opinion addressing anticipated effects of the project to the listed
species and may exempt a limited level of incidental take from section 9 of the Act. If the
project may result in the take of listed species and no Federal agency is involved, then an



Mr. Derek Marshall                                                                        2

"incidental take" permit pursuant to section 10(a)(1)(B) of the Act should be obtained. The Service may issue such a permit upon completion by the permit applicant of a satisfactory habitat conservation plan for the listed species that would be affected by the project.

Your letter states that the property at Lund Hill Drive in Cotati is unsuitable for the tiger salamander since the property contains no breeding habitat and degraded ruderal/grassland habitat. The Service does not agree with your determination. Protocol surveys for the tiger salamander were not conducted, and therefore, the Service cannot rule out that tiger salamanders are not present on this property because of the presence of suitable habitat at the site, and the location is within 1.3 miles of a known breeding pond. Tiger salamanders could use the property as upland dispersal habitat or inhabit the location. You may have biologists possessing a valid section 10(a)(1)(A) permit survey the project site to determine if the animal is present on site. The Service has developed survey guidance that reliably determines the presence or absence of tiger salamanders. The most recent survey guidance can be obtained by contacting this office. If the tiger salamander occurs on the project site, we recommend that you contact us concerning authorization for incidental take under the Act. In lieu of having surveys performed, you may follow the mitigation guidelines described in the Service and California Department of Fish and Game's joint letter for the tiger salamander on the Santa Rosa Plain. A copy of this letter is attached.

If you have questions regarding this response on the Mead project located at Lund Hill Drive in Cotati, please contact Ryan Olah at (916) 414-6625.

Sincerely,

Chris Nagano
Deputy Assistant Field Supervisor
Endangered Species Program

Cc: Carl Wilcox, California Department of Fish and Game, Yountville, California
Enclosure

 US Fish & Wildlife Service
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, CA 95825-1846
(916) 414-6600
FAX (916) 414-6612

 CA Dept. of Fish & Game
Post Office Box 47
Yountville, CA 94599
(707) 944-5500
FAX (707) 944-5563

Mr. Jeffrey C. Kolin
City Manager
Office of the City Manager
100 Santa Rosa Avenue
P.O. Box 1678
Santa Rosa, California 95402-1678

JUN 2 9 2005

Dear Mr. Kolin:

The purpose of this letter is to provide guidance to local jurisdictions regarding the U.S. Fish and Wildlife Service (FWS) and California Department of Fish and Game (DFG) current approach to mitigate for potential impacts to the California tiger salamander (CTS), listed plants and their habitat associated with development on the Santa Rosa Plain. Coordination of Federal, State and local efforts to preserve the species and a consistent approach for mitigation are vital to habitat preservation and the long-term conservation of the species, and should provide more certainty and efficiency in the project review process.

As you know, FWS and DFG have been working with the Conservation Strategy Team made up of U.S. Army Corps of Engineers, U.S. Environmental Protection Agency, North Coast Regional Water Quality Control Board, local agencies, and representatives from the Laguna de Santa Rosa Foundation, environmental community and the private landowner community. This team assembled and reviewed information relating to local land use and development patterns and biological considerations for the conservation of the CTS, listed plants and their habitats. The goal of the team is to develop a proposed conservation strategy for the Santa Rosa Plain. While this process has not been completed and the proposed Conservation Strategy has not undergone review and consideration by the agencies and the public, the information assembled has provided the FWS and DFG with substantial information to provide guidelines for mitigation for individual projects.

In particular, the conservation team has developed extensive information about areas that are suitable for the establishment of habitat preserves. Fragmentation of CTS and listed plant habitat across the Santa Rosa Plain is one of the most serious issues associated with development. The FWS and DFG have sought to focus our mitigation efforts on preventing further fragmentation and establishing, to the maximum extent possible, a viable preserve system that will contribute to the long-term conservation and recovery of the species.

The FWS and DFG intend to continue to work with the local jurisdictions and other stakeholders in the Santa Rosa Plain area to develop and implement a long-term strategy for conservation of CTS, listed plants and their habitat based on the information developed by the Conservation Strategy Team. However, in the interim, it is critical that the agencies continue to coordinate their efforts to ensure that mitigation as part of the project review process at the federal and local level is consistent and supports the long-term conservation goals identified by the Conservation Strategy Team.

The FWS and DFG intend to follow the interim guidelines that have been developed and currently apply in reviewing project-specific mitigation requirements (Enclosure). These guidelines have been reviewed by the Conservation Strategy Team and the Draft Conservation Strategy has been peer reviewed by biologists and is consistent with their

Mr. Jeffrey Kolin                                                                                                      2

overall long-term goals for CTS and listed plant conservation. The Conservation Strategy Team has identified these guidelines as appropriate "Interim Mitigation" in its draft of Conservation Strategy. The interim approach used by the FWS and DFG includes established mitigation ratios based on proximity to CTS breeding pools, use of the existing Plant Programmatic Biological Opinion, as well as standards for the establishment of proposed preserve sites, guidelines regarding the use of mitigation banks, management and enhancement of habitat and translocation of the species. In addition, certain projects will require additional measures to minimize take of the listed species. It is our understanding that the local jurisdictions have been provided with this information and will also incorporate, to the extent appropriate, the interim mitigation in their environmental review process for individual projects.

Development of a network of preserves should provide increased conservation benefits as compared to the piecemeal approach to individual project mitigation. Preservation of contiguous or connected habitat, subject to management and monitoring practices designed to enhance that habitat, should result in more extensive, high-quality habitat. Focusing mitigation in the most suitable areas is likely to encourage the restoration or creation of new habitat. This should minimize habitat fragmentation that would result without a coordinated approach and should result in additional viable CTS habitat in suitable areas, providing the opportunity for the long-term increase that conserve the listed species and contribute to their recovery in the Santa Rosa Plain.

The FWS and DFG intend to continue to follow this approach pending finalization and implementation of a long-term conservation strategy. The FWS and DFG urge all of the local agencies to incorporate this approach to mitigation in their review process at the local level. Finally, the local jurisdictions' ongoing process of coordinating its CEQA review process with FWS and DFG has been very helpful to us. The FWS and DFG encourage the local jurisdictions to continue this informal process to ensure a timely response to projects that are ready to proceed at a local level. However, we urge the local jurisdictions to adopt and implement a long-term solution that conserves listed species in the Santa Rosa Plain.

If you have any questions about the FWS or DFG's interim approach for the Santa Rosa Plain, please contact Cay C. Goude with FWS at (916) 414-6600 or Carl Wilcox with DFG at (707) 944-5525.

Sincerely,

Wayne S. White
Field Supervisor
Sacramento Fish and Wildlife Office

Robert W. Floerke
Regional Manager
Central Coast Region

Enclosure

Areas generally being considered by the U.S. Fish and Wildlife Service (FWS) and California Department of Fish and Game (DFG) for developing preserves within the Santa Rosa Plain are shown on the City of Santa Rosa's Website http://ci.santa-rosa.ca.us/default.aspx?PageId=1111.

Mitigation for projects that impact either CTS or listed plants on the Santa Rosa Plain can be achieved either through the acquisition of a conservation easement or fee title and long-term management of individual mitigation sites or the acquisition of mitigation credits from a mitigation bank approved by the agencies. Generally, the FWS and DFG are using the following guidelines for mitigation.

**Mitigation of 3:1.** For projects with impact on breeding habitat, *i.e.*, those that are within 500 feet of a known breeding site(s).

**Mitigation of 2:1.** For projects with an impact on upland habitat, *i.e.*, those that are greater than 500 feet, and within 2200 feet of a known breeding site(s), or within 500 feet of an adult occurrence.

**Mitigation of 1:1.** For projects with an impact on dispersal habitat, *i.e.*, those that are greater than 2200 feet, and within 1.3 miles of a known breeding site(s). Also, projects outside of 1.3 miles of a known breeding site(s), which have potential CTS habitat could mitigate at 1:1 or do surveys as described, below.

During this interim period, a project proponent may choose to survey (using FWS/DFG Survey Guidance) to determine CTS presence or absence. If CTS are not found during these surveys then mitigation would not be required. In the event CTS is found, mitigation shall be as outlined above. Individual projects would need to be independently evaluated by the FWS/DFG.

Proposed individual mitigation sites must meet or exceed the following minimum performance standards/suitability requirements:

(1)    Be within the boundary of one of the Conservation Areas as shown on the web site.

(2)    The mitigation site must meet one of the following standards:

      a.    Contain known, occupied CTS breeding, aestivation, or dispersal habitat and/or known population or populations of federally listed plants; or represent potential CTS or plant habitat. With respect to potential CTS or plant habitat the site must exhibit, in the judgment of the FWS or DFG, reasonable potential for habitat restoration or enhancement; or

      b.    Be approved by the FWS and DFG and function as 1) a buffer separating an existing or likely future preserve site from nearby incompatible land uses (*e.g.*, areas without CTS habitat); 2) a corridor or link from one preserve site to another or one conservation area to another; or 3) an open space that provides other specific and recognizable conservation value for listed species.

Enclosure                                                                                          Page 2

(3)     The mitigation site must be free of excessive land surface features *(e.g.,* roads parking lots, other hardened surfaces, buildings or other structures or extensive hardscape) that cause a significant portion of the site to be unsuitable as CTS or plant habitat. Generally, no more that 15 percent of the land surface of any potential preserve site may include or be covered by such features unless it is to be restored as part of the preservation action.

(4)     The mitigation site shall not be isolated from other nearby CTS habitats (preserve or non-preserve) by incompatible land uses *(e.g.,* hardscape) or other significant barriers to CTS movement and dispersal *(e.g.,* Highway 101).

(5)     The mitigation site shall not be inhabited by fish and bullfrogs or other non-native predatory species, unless, in the judgment of FWS and DFG, such species can be effectively removed or eradicated.

(6)     The mitigation site shall not be within the Laguna de Santa Rosa 100-year floodplain.

(7)     The mitigation site shall not exhibit history or evidence of the presence (storage or use) of hazardous material on the surface of the site unless proof of removal or remediation can be provided.

(8)     The applicant/developer shall provide fee title or a conservation easement as required by DFG and FWS. The property shall be preserved for the benefit of the affected species, and any retained activities (i.e., agricultural) must be compatible with this purpose.

(9)     The applicant/developer shall provide a wetland creation plan, if wetlands are filled, as or if CTS breeding pools/ponds are to be created.

(10)    The applicant/developer shall provide a Mitigation and Monitoring Management Plan that contains, at a minimum, the following components:

    a.     The mitigation lands must be managed and monitored, and any necessary enhancements, as required by DFG and FWS, must be enforceable.

    b.     The Mitigation and Monitoring Management Plan shall describe specific management actions necessary to manage, enhance, and preserve the resources protected and created on the site and monitoring that will be conducted to determine the success of created wetland and the statue of the protected resources and effectiveness of specified management actions.

    c.     Endowment: funding in an amount determined by the DFG and FWS shall be provided to assure long-term management and monitoring.

# EXHIBIT E

 **United States Department of the Interior** 

FISH AND WILDLIFE SERVICE
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, California 95825-1846

IN REPLY REFER TO:
1-1-05-TA-2034

OCT 1 4 2005

Ms. Wendy Mountain
P.O. Box 1028
1355 Lawndale Road
Kenwood California 95452

Dear Ms. Mountain:

This letter is in response to your August 30, 2005, requesting information on the property owned by Michael Mead located at Lund Hill Drive in Cotati, Sonoma County, California. The Service issued a letter on the Mead project on August 31, 2005, which states that Mr. Mead could either conduct protocol surveys for tiger salamanders or follow the mitigation guidelines described in the Service and California Department of Fish and Game's joint letter for the tiger salamander. A copy of this letter is attached. Furthermore, Service staff visited the project site on September 13, and confirmed that the project site could be potential habitat since tiger salamanders could disperse to the project site or could be currently be present on the site.

If you have questions regarding our response to the Mead Project in Cotati, please contact our office or call (916) 414-6600.

Sincerely,

Chris Nagano
Deputy Assistant Field Supervisor

Enclosure





# United States Department of the Interior
### FISH AND WILDLIFE SERVICE
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, California 95825-1846



IN REPLY REFER TO:
1-1-04-TA-2053

**AUG 3 1 2005**

Mr. Derek Marshall
BioConsultant LLC
122 Calistoga Rd. #360
Santa Rosa, CA 95409

Subject:     California Tiger Salamander Site Assessment for the Mead Project at Lund
Hill Drive, Cotati, Sonoma County, California

Dear Mr. Marshall:

This letter is in response to your April 19, 2004, request to the U.S. Fish and Wildlife Service
(Service) for a "no effect" determination for the Mead project located at Lund Hill Drive in
Cotati, Sonoma County, California. At issue are the potential effects to the endangered Sonoma
County distinct population segment of the California tiger salamander (*Ambystoma californiense*)
(tiger salamander). Your letter was received in our office on May 27, 2004, and we received
additional information on the location of the project on July 13, 2005. This response is provided
in accordance with the Endangered Species Act of 1973, as amended (16 U.S.C. 1531 *et seq.*).

Section 9 of the Act and its implementing regulations prohibit the "take" of any federally listed
animal species by any person subject to the jurisdiction of the United States without a special
exemption. Take is defined by the Act as "...to harass, harm, pursue, hunt, shoot, wound, kill,
trap, capture, or collect, or attempt to engage in any such conduct" of any listed wildlife species.
"Harm" in this definition includes significant habitat modification or degradation where it
actually kills or injures wildlife, by significantly impairing essential behavior patterns, including
breeding, feeding, or sheltering (50 CFR 17.3). "Harass" means an intentional or negligent act or
omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to
disrupt normal behavioral patterns which include, but are not limited to breeding, feeding, or
sheltering.

Take incidental to an otherwise lawful activity may be authorized by one of two procedures.
If a Federal agency is involved with the permitting, funding, or carrying out of this project,
and a listed species is going to be adversely affected, then initiation of consultation between
that agency and the Service pursuant to section 7 of the Act is required. Such consultation
would result in a biological opinion addressing anticipated effects of the project to the listed
species and may exempt a limited level of incidental take from section 9 of the Act. If the
project may result in the take of listed species and no Federal agency is involved, then an



Mr. Derek Marshall                                                                                    2

"incidental take" permit pursuant to section 10(a)(1)(B) of the Act should be obtained. The Service may issue such a permit upon completion by the permit applicant of a satisfactory habitat conservation plan for the listed species that would be affected by the project.

Your letter states that the property at Lund Hill Drive in Cotati is unsuitable for the tiger salamander since the property contains no breeding habitat and degraded ruderal/grassland habitat. The Service does not agree with your determination. Protocol surveys for the tiger salamander were not conducted, and therefore, the Service cannot rule out that tiger salamanders are not present on this property because of the presence of suitable habitat at the site, and the location is within 1.3 miles of a known breeding pond. Tiger salamanders could use the property as upland dispersal habitat or inhabit the location. You may have biologists possessing a valid section 10(a)(1)(A) permit survey the project site to determine if the animal is present on site. The Service has developed survey guidance that reliably determines the presence or absence of tiger salamanders. The most recent survey guidance can be obtained by contacting this office. If the tiger salamander occurs on the project site, we recommend that you contact us concerning authorization for incidental take under the Act. In lieu of having surveys performed, you may follow the mitigation guidelines described in the Service and California Department of Fish and Game's joint letter for the tiger salamander on the Santa Rosa Plain. A copy of this letter is attached.

If you have questions regarding this response on the Mead project located at Lund Hill Drive in Cotati, please contact Ryan Olah at (916) 414-6625.

Sincerely,

Chris Nagano
Deputy Assistant Field Supervisor
Endangered Species Program

Cc: Carl Wilcox, California Department of Fish and Game, Yountville, California
Enclosure

 US Fish & Wildlife Service
Sacramento Fish and Wildlife Office
2800 Cottage Way, Room W-2605
Sacramento, CA 95825-1846
(916) 414-6600
FAX (916) 414-6612

 CA Dept. of Fish & Game
Post Office Box 47
Yountville, CA 94599
(707) 944-5500
FAX (707) 944-5563

Mr. Jeffrey C. Kolin                                                    JUN 2`9 2005
City Manager
Office of the City Manager
100 Santa Rosa Avenue
P.O. Box 1678
Santa Rosa, California 95402-1678

Dear Mr. Kolin:

The purpose of this letter is to provide guidance to local jurisdictions regarding the U.S. Fish and Wildlife Service (FWS) and California Department of Fish and Game (DFG) current approach to mitigate for potential impacts to the California tiger salamander (CTS), listed plants and their habitat associated with development on the Santa Rosa Plain. Coordination of Federal, State and local efforts to preserve the species and a consistent approach for mitigation are vital to habitat preservation and the long-term conservation of the species, and should provide more certainty and efficiency in the project review process.

As you know, FWS and DFG have been working with the Conservation Strategy Team made up of U.S. Army Corps of Engineers, U.S. Environmental Protection Agency, North Coast Regional Water Quality Control Board, local agencies, and representatives from the Laguna de Santa Rosa Foundation, environmental community and the private landowner community. This team assembled and reviewed information relating to local land use and development patterns and biological considerations for the conservation of the CTS, listed plants and their habitats. The goal of the team is to develop a proposed conservation strategy for the Santa Rosa Plain. While this process has not been completed and the proposed Conservation Strategy has not undergone review and consideration by the agencies and the public, the information assembled has provided the FWS and DFG with substantial information to provide guidelines for mitigation for individual projects.

In particular, the conservation team has developed extensive information about areas that are suitable for the establishment of habitat preserves. Fragmentation of CTS and listed plant habitat across the Santa Rosa Plain is one of the most serious issues associated with development. The FWS and DFG have sought to focus our mitigation efforts on preventing further fragmentation and establishing, to the maximum extent possible, a viable preserve system that will contribute to the long-term conservation and recovery of the species.

The FWS and DFG intend to continue to work with the local jurisdictions and other stakeholders in the Santa Rosa Plain area to develop and implement a long-term strategy for conservation of CTS, listed plants and their habitat based on the information developed by the Conservation Strategy Team. However, in the interim, it is critical that the agencies continue to coordinate their efforts to ensure that mitigation as part of the project review process at the federal and local level is consistent and supports the long-term conservation goals identified by the Conservation Strategy Team.

The FWS and DFG intend to follow the interim guidelines that have been developed and currently apply in reviewing project-specific mitigation requirements (Enclosure). These guidelines have been reviewed by the Conservation Strategy Team and the Draft Conservation Strategy has been peer reviewed by biologists and is consistent with their

Mr. Jeffrey Kolin                                                                                                    2

overall long-term goals for CTS and listed plant conservation. The Conservation Strategy Team has identified these guidelines as appropriate "Interim Mitigation" in its draft of Conservation Strategy. The interim approach used by the FWS and DFG includes established mitigation ratios based on proximity to CTS breeding pools, use of the existing Plant Programmatic Biological Opinion, as well as standards for the establishment of proposed preserve sites, guidelines regarding the use of mitigation banks, management and enhancement of habitat and translocation of the species. In addition, certain projects will require additional measures to minimize take of the listed species. It is our understanding that the local jurisdictions have been provided with this information and will also incorporate, to the extent appropriate, the interim mitigation in their environmental review process for individual projects.

Development of a network of preserves should provide increased conservation benefits as compared to the piecemeal approach to individual project mitigation. Preservation of contiguous or connected habitat, subject to management and monitoring practices designed to enhance that habitat, should result in more extensive, high-quality habitat. Focusing mitigation in the most suitable areas is likely to encourage the restoration or creation of new habitat. This should minimize habitat fragmentation that would result without a coordinated approach and should result in additional viable CTS habitat in suitable areas, providing the opportunity for the long-term increase that conserve the listed species and contribute to their recovery in the Santa Rosa Plain.

The FWS and DFG intend to continue to follow this approach pending finalization and implementation of a long-term conservation strategy. The FWS and DFG urge all of the local agencies to incorporate this approach to mitigation in their review process at the local level. Finally, the local jurisdictions' ongoing process of coordinating its CEQA review process with FWS and DFG has been very helpful to us. The FWS and DFG encourage the local jurisdictions to continue this informal process to ensure a timely response to projects that are ready to proceed at a local level. However, we urge the local jurisdictions to adopt and implement a long-term solution that conserves listed species in the Santa Rosa Plain.

If you have any questions about the FWS or DFG's interim approach for the Santa Rosa Plain, please contact Cay C. Goude with FWS at (916) 414-6600 or Carl Wilcox with DFG at (707) 944-5525.

Sincerely,

Wayne S. White
Field Supervisor
Sacramento Fish and Wildlife Office

Robert W. Floerke
Regional Manager
Central Coast Region

Enclosure

Enclosure

Areas generally being considered by the U.S. Fish and Wildlife Service (FWS) and California Department of Fish and Game (DFG) for developing preserves within the Santa Rosa Plain are shown on the City of Santa Rosa's Website http://ci.santa-rosa.ca.us/default.aspx?PageId=1111.

Mitigation for projects that impact either CTS or listed plants on the Santa Rosa Plain can be achieved either through the acquisition of a conservation easement or fee title and long-term management of individual mitigation sites or the acquisition of mitigation credits from a mitigation bank approved by the agencies. Generally, the FWS and DFG are using the following guidelines for mitigation.

**Mitigation of 3:1.** For projects with impact on breeding habitat, *i.e.*, those that are within 500 feet of a known breeding site(s).

**Mitigation of 2:1.** For projects with an impact on upland habitat, *i.e.*, those that are greater than 500 feet, and within 2200 feet of a known breeding site(s), or within 500 feet of an adult occurrence.

**Mitigation of 1:1.** For projects with an impact on dispersal habitat, *i.e.*, those that are greater than 2200 feet, and within 1.3 miles of a known breeding site(s). Also, projects outside of 1.3 miles of a known breeding site(s), which have potential CTS habitat could mitigate at 1:1 or do surveys as described, below.

During this interim period, a project proponent may choose to survey (using FWS/DFG Survey Guidance) to determine CTS presence or absence. If CTS are not found during these surveys then mitigation would not be required. In the event CTS is found, mitigation shall be as outlined above. Individual projects would need to be independently evaluated by the FWS/DFG.

Proposed individual mitigation sites must meet or exceed the following minimum performance standards/suitability requirements:

(1)     Be within the boundary of one of the Conservation Areas as shown on the web site.

(2)     The mitigation site must meet one of the following standards:

     a.     Contain known, occupied CTS breeding, aestivation, or dispersal habitat and/or known population or populations of federally listed plants; or represent potential CTS or plant habitat. With respect to potential CTS or plant habitat the site must exhibit, in the judgment of the FWS or DFG, reasonable potential for habitat restoration or enhancement; or

     b.     Be approved by the FWS and DFG and function as 1) a buffer separating an existing or likely future preserve site from nearby incompatible land uses (*e.g.*, areas without CTS habitat); 2) a corridor or link from one preserve site to another or one conservation area to another; or 3) an open space that provides other specific and recognizable conservation value for listed species.

Enclosure                                                                                                    Page 2

(3)     The mitigation site must be free of excessive land surface features *(e.g.,* roads parking lots, other hardened surfaces, buildings or other structures or extensive hardscape) that cause a significant portion of the site to be unsuitable as CTS or plant habitat. Generally, no more that 15 percent of the land surface of any potential preserve site may include or be covered by such features unless it is to be restored as part of the preservation action.

(4)     The mitigation site shall not be isolated from other nearby CTS habitats (preserve or non-preserve) by incompatible land uses *(e.g.,* hardscape) or other significant barriers to CTS movement and dispersal *(e.g.,* Highway 101).

(5)     The mitigation site shall not be inhabited by fish and bullfrogs or other non-native predatory species, unless, in the judgment of FWS and DFG, such species can be effectively removed or eradicated.

(6)     The mitigation site shall not be within the Laguna de Santa Rosa 100-year floodplain.

(7)     The mitigation site shall not exhibit history or evidence of the presence (storage or use) of hazardous material on the surface of the site unless proof of removal or remediation can be provided.

(8)     The applicant/developer shall provide fee title or a conservation easement as required by DFG and FWS. The property shall be preserved for the benefit of the affected species, and any retained activities (i.e., agricultural) must be compatible with this purpose.

(9)     The applicant/developer shall provide a wetland creation plan, if wetlands are filled, as or if CTS breeding pools/ponds are to be created.

(10)    The applicant/developer shall provide a Mitigation and Monitoring Management Plan that contains, at a minimum, the following components:

    a.     The mitigation lands must be managed and monitored, and any necessary enhancements, as required by DFG and FWS, must be enforceable.

    b.     The Mitigation and Monitoring Management Plan shall describe specific management actions necessary to manage, enhance, and preserve the resources protected and created on the site and monitoring that will be conducted to determine the success of created wetland and the statue of the protected resources and effectiveness of specified management actions.

    c.     Endowment: funding in an amount determined by the DFG and FWS shall be provided to assure long-term management and monitoring.