**United States District Court**
For the Northern District of California

IN THE  UNITED  STATES  DISTRICT  COURT

FOR  THE  NORTHERN  DISTRICT  OF  CALIFORNIA

MICHAEL MEAD, an individual,

        Plaintiff,

   v.

CITY OF COTATI, a municipal
corporation; PLANNING COMMISSION OF
THE CITY OF COTATI; UNITED STATES
FISH AND WILDLIFE SERVICE; DONALD
KOCH, in his official capacity as
Director of the California Department
of Fish and Game; and Does 1-10,
inclusive,

        Defendants.

_____/

No. C 08-3585 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS

    Plaintiff Michael Mead alleges, among other things, that his
property was taken from him without just compensation, in violation
of the Fifth Amendment to the United States Constitution.
Defendant U.S. Fish and Wildlife Service (FWS) now moves to dismiss
the claim against it.  Defendants City of Cotati and Planning
Commission of the City of Cotati (the City Defendants) move
separately to dismiss the claims against them.  The matter was
heard on November 6, 2008.  Having considered oral argument and all
of the papers submitted by the parties, the Court grants

Defendants' motions.

BACKGROUND

The following facts are alleged in the complaint or can be determined by reference to documents attached to the complaint. Plaintiff owns 1.6 acres of vacant land in contiguous lots located in Cotati, California.  In September, 2006, he applied to the Cotati Planning Commission for a permit to build four duplexes on 0.9 acres of his property.  While his application was pending, Plaintiff became aware of two conditions that the Commission intended to impose on his permit: compliance with the City's affordable housing plan and mitigation of the impact of his proposed development on the California tiger salamander, an endangered species.

The affordable housing plan provides that each residential development "shall be designed and constructed to provide at least 20 percent of the total units as inclusionary units restricted for occupancy by moderate-, low- or very low-income households." Compl. Ex. A at § 17.31-020(A).  Alternatively, a developer may propose an alternative means of compliance, either by: 1) constructing inclusionary units off-site; 2) dedicating to the City land that is suitable for the construction of inclusionary units; or 3) combining on-site construction, off-site construction, in-lieu fees and land dedication.  A developer seeking to construct nine or fewer units can, instead of meeting these requirements, pay an in-lieu fee to the City.

The tiger salamander mitigation requirement resulted from the City's enforcement of interim mitigation guidelines developed by the FWS and the California Department of Fish and Game (DFG)

United States District Court
For the Northern District of California

pursuant to the Endangered Species Act.  These guidelines require that, if a development project will adversely affect a known tiger salamander breeding site, a certain amount of land, depending on the project's distance from the breeding site, must be dedicated to salamander conservation.  Plaintiff hired a consulting firm to perform a biological assessment of his property.  The firm concluded that, because the property is between 2,200 feet and 1.3 miles from a known tiger salamander breeding site, Plaintiff is required to devote one acre of land to habitat conservation for each acre of the breeding site that is adversely affected by his development.  Plaintiff submitted the consultant's report to the FWS and the DFG for review and confirmation, but neither agency has provided "any guidance or direction regarding mitigation."  Compl. ¶ 17.

In a letter dated August 17, 2007, Plaintiff asked the Commission to waive the tiger salamander mitigation requirement when considering his permit application, claiming that the requirement effects an unconstitutional taking of his property.  In a letter dated January 23, 2008, Plaintiff requested a total waiver of both the affordable housing and the tiger salamander mitigation requirements, claiming that they were both unconstitutional takings.  On January 28, 2008, the Commission passed a resolution approving Plaintiff's permit application, but subjecting his project to both conditions.  The resolution contains a paragraph that states:

> The Conditions set forth herein include certain fees, dedication requirements, reservation requirements, and other exactions. . . . The applicant is . . . notified that the 90-day approval period in which the applicant may protest these fees, dedications, reservations, and

> other exactions, pursuant to Government Code Section
> 66020(1) has begun.  If the applicant fails to file
> protest within this 90-day period complying with all of
> the requirements of Section 66020, the applicant will be
> legally barred from later challenging such exactions.

Compl. Ex. F at p. 11, ¶ 52.

In a letter to the Commission dated April 1, 2008, Plaintiff protested the affordable housing and tiger salamander mitigation conditions, arguing that each represents an unlawful taking.  The City rejected Plaintiff's protest in a June 6, 2008 letter.  In the letter, the City noted that, pursuant to § 17.84.020 of the Cotati Municipal Code, a decision of the Planning Commission may be appealed to the city council within ten days of the date of the decision.  It was apparently the City's view that the conditions were not among the "certain fees, dedication requirements, reservation requirements, and other exactions" described in the paragraph above.  Accordingly, the City cited Plaintiff's failure to file an appeal to the city council within ten days as one of several grounds for its rejection.

Plaintiff filed this lawsuit on July 25, 2008.  He charges all Defendants with unconstitutionally taking his property without just compensation by imposing the tiger salamander mitigation condition on his development project.  He also charges the City Defendants with unconstitutionally taking his property without just compensation by imposing the affordable housing condition on his development project. He further asserts that, by imposing the affordable housing condition, the City Defendants have violated his due process and equal protection rights under the Fourteenth Amendment.  Finally, he maintains that the City Defendants have violated the California Mitigation Fee Act.

LEGAL STANDARD

I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

II.  Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  See Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a

claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. <u>Id.</u> at 296-97.

DISCUSSION

I.   The FWS's Motion

The FWS argues that Plaintiff may not proceed with his takings claim against it because the claim is not ripe for review, and thus is not a justiciable case or controversy over which the Court has subject matter jurisdiction pursuant to Article III of the Constitution.

6

United States District Court
For the Northern District of California

The Fifth Amendment's takings clause provides, "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The FWS's argument begins with the premise that the takings clause does not prohibit the government from taking private property, but rather places a condition on such a taking: that the government pay just compensation. See First English Evangelical Lutheran Church v. Los Angeles County, 482 U.S. 304, 314 (1987). "In other words, [the takings clause] is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536-37, (2005) (emphasis in original). Thus, the FWS is not prohibited from taking Plaintiff's property, provided it pays just compensation for it.

The Tucker Act, 28 U.S.C. § 1491, provides that the United States Court of Federal Claims has exclusive jurisdiction to hear any claim against the United States seeking damages in excess of $10,000 based on the Constitution, a statute, a regulation, or an express or implied-in-fact contract. See 28 U.S.C. § 1491(a)(1); Christopher Vill. L.P. v. United States, 360 F.3d 1319, 1332-33 (Fed. Cir. 2004). Claims for damages not exceeding $10,000 may be brought in either the Court of Federal Claims or in a United States District Court. See 28 U.S.C. § 1346; Christopher Vill., 360 F.3d at 1332. If a plaintiff alleges a taking in violation of the Fifth Amendment, "the claim is 'founded upon the Constitution' and within the jurisdiction of the Claims Court to hear and determine" pursuant to the Tucker Act. Preseault v. ICC, 494 U.S. 1, 12

(1990).

Because a "property owner has no claim against the Government for a taking" if the government "has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation," takings claims against the federal government "are premature until the property owner has availed itself of the process provided by the Tucker Act." Id. at 11.

Plaintiff points out that he does not seek compensation, but rather seeks a declaration that the affordable housing and tiger salamander mitigation conditions are unconstitutional takings, and an injunction prohibiting Defendants from enforcing them. However, "[t]he requirement that a case or controversy exist under the Declaratory Judgment Act is identical to Article III's constitutional case or controversy requirement. If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). Plaintiff's claim for declaratory judgment is not ripe for review because a taking is not unconstitutional unless it is uncompensated, and he has not yet sought compensation.[1] The fact that he seeks a declaratory judgment and equitable relief does not alter this analysis, because the Court cannot declare that an unconstitutional taking has occurred -- let alone order injunctive relief -- until it can determine that Plaintiff was not given just compensation for the

---

[1]The FWS also argues that Plaintiff's claim against it is not ripe in an additional sense: because the agency has not yet reached a final decision regarding application of the mitigation guidelines to Plaintiff's proposed use of his property. The Court need not reach this argument because it finds that it lacks jurisdiction over Plaintiff's claim regardless.

United States District Court
For the Northern District of California

taking.

Plaintiff's argument was directly addressed in <u>Bay View, Inc.</u> <u>v. Ahtna, Inc.</u>, 105 F.3d 1281 (9th Cir. 1997).  In that case, the Ninth Circuit considered whether it could declare that a statute violated the takings clause, even though the Tucker Act provided an avenue for obtaining compensation for those whose property had been taken by operation of the statute.  The court concluded that it could not do so:

> [A]ppellants clearly are entitled to bring a Tucker Act claim because Congress did not explicitly preclude such suits when it enacted [the statute that resulted in the alleged taking].  Thus, appellants' takings claim is premature until they have availed themselves of the process provided by the Tucker Act.  Because appellants can sue the United States in the Court of Federal Claims, the [statute] is not an uncompensated taking.  We therefore have no basis for holding [it] invalid as appellants suggest.

<u>Id.</u> at 1285 (citations and internal quotation marks omitted).

The Ninth Circuit considered and rejected the argument that a court's power to adjudicate a takings claim depends on the type of relief the plaintiff seeks:

> [M]any courts have viewed the Tucker Act as a jurisdictional hurdle against the payment of damages but not as an impediment to equitable relief.  This, of course, is totally wrong.  Because a compensation remedy is available, any taking that may have occurred simply cannot violate the takings clause.  We have no authority to decide the hypothetical question whether the [statute] would amount to an unconstitutional taking were it uncompensated.

<u>Id.</u> at 1286 (citations omitted).  In reaching this conclusion, the court acknowledged that Supreme Court precedent on the matter is confusing and inconsistent.  In particular, it noted that <u>Duke Power Co. v. Carolina Environmental Study Group</u>, 438 U.S. 59, 71 n.15 (1978), "suggest[s] that the Tucker Act does not preclude

district courts from granting equitable relief in the form of declaratory judgments in takings cases against the United States." Bay View, 105 F.3d at 1286 n.6. But in the subsequent case of Ruckelshaus v. Monsanto, Co., 467 U.S. 986 (1984), the Supreme Court held, "Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." Id. at 1016. After reviewing the applicable precedent, the Bay View court affirmed that the rule in the Ninth Circuit is that "neither injunctive nor declaratory relief is available for a takings claim against the United States." Id. (citing Clouser v. Espy, 42 F.3d 1522, 1539-40 (9th Cir. 1994), cert. denied, 515 U.S. 1141 (1995)). In its view, declaring that an act of the government is an uncompensated taking is a logical impossibility until the property owner has attempted to obtain compensation.

Plaintiff does not specifically address Bay View in its opposition to the FWS's motion. At the hearing, Plaintiff argued that the Ninth Circuit's statement about injunctive and declaratory relief is dicta. The Court disagrees with this characterization. Bay View is explicit in holding that a taking is unconstitutional only if it is not compensated. Granting injunctive or declaratory relief before a plaintiff has sought and been denied compensation would contradict this holding.

Nor has Plaintiff cited any subsequent case that could be interpreted as overruling Bay View. The closest contender is Eastern Enterprises v. Apfel, 524 U.S. 498 (1998). In that case, Justice O'Connor, writing for a four-justice plurality, discussed

10

the interplay between the availability of compensation and the

appropriateness of declaratory or equitable relief:

> In this case, [] Eastern does not seek compensation from
> the Government.  Instead, Eastern requests a declaratory
> judgment that the Coal Act violates the Constitution and
> a corresponding injunction against the Commissioner's
> enforcement of the Act as to Eastern.  Such equitable
> relief is arguably not within the jurisdiction of the
> Court of Federal Claims under the Tucker Act.

> Some Courts of Appeals have accepted the view that the
> Tucker Act does not apply to suits seeking only equitable
> relief, while others have concluded that a claim for
> equitable relief under the Takings Clause is
> hypothetical, and therefore not within the district
> courts' jurisdiction, until compensation has been sought
> and refused in the Court of Federal Claims, see Bay View,
> 105 F.3d at 1286.

> On the one hand, this Court's precedent can be read to
> support the latter conclusion that regardless of the
> nature of relief sought, the availability of a Tucker Act
> remedy renders premature any takings claim in federal
> district court.  See Preseault, 494 U.S. at 11; see also
> Monsanto, 467 U.S. at 1016.  On the other hand, in a case
> such as this one, it cannot be said that monetary relief
> against the Government is an available remedy.  The
> payments mandated by the Coal Act, although calculated by
> a Government agency, are paid to the privately operated
> Combined Fund.  Congress could not have contemplated that
> the Treasury would compensate coal operators for their
> liability under the Act, for every dollar paid pursuant
> to a statute would be presumed to generate a dollar of
> Tucker Act compensation.  Accordingly, the presumption of
> Tucker Act availability must be reversed where the
> challenged statute, rather than burdening real or
> physical property, requires a direct transfer of funds
> mandated by the Government.  In that situation, a claim
> for compensation would entail an utterly pointless set of
> activities.  Instead, as we explained in Duke Power, the
> Declaratory Judgment Act "allows individuals threatened
> with a taking to seek a declaration of the
> constitutionality of the disputed governmental action
> before potentially uncompensable damages are sustained."
> 438 U.S. at 71 n.15.

> Moreover, in situations analogous to this case, we have
> assumed the lack of a compensatory remedy and have
> granted equitable relief for Takings Clause violations
> without discussing the applicability of the Tucker Act.
> Without addressing the basis of this Court's
> jurisdiction, we have also upheld similar statutory
> schemes against Takings Clause challenges.  While we are

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

> not bound by previous exercises of jurisdiction in cases
> in which our power to act was not questioned but was
> passed <u>sub silentio</u>, neither should we disregard the
> implications of an exercise of judicial authority assumed
> to be proper in previous cases.  Based on the nature of
> the taking alleged in this case, we conclude that the
> declaratory judgment and injunction sought by petitioner
> constitute an appropriate remedy under the circumstances,
> and that it is within the district courts' power to award
> such equitable relief.

<u>Id.</u> at 520-22 (some citations and internal quotation marks omitted;

remaining citations reformatted).

This passage represents the opinion of four justices only, and

thus is not binding on the lower courts.  <u>See</u> <u>United States v.</u>

<u>Rodriguez-Preciado</u>, 399 F.3d 1118, 1139-41 (9th Cir. 2005).

Justice Kennedy, concurring in the judgment, did not reach the

issue of whether declaratory relief is available on a claim brought

under the takings clause.  In his view, because the Coal Act did

not affect a "specific property right or interest," but simply

required the payment of money, it did not fit within the rubric of

the takings clause at all.  <u>Id.</u> at 540.  The four dissenting

justices shared this view.  <u>Id.</u> at 554-56.  Moreover, it is clear

that Justice O'Connor's conclusion depended on "the nature of the

taking alleged in [that] case" -- specifically, the fact that

monetary relief against the government was not an available remedy

under the circumstances.[2]  Here, in contrast, any taking of

Plaintiff's property could be compensated by a monetary payment,

and there is no dispute that Plaintiff could bring a claim for such

compensation under the Tucker Act.  Thus, the rationale behind the

---

[2]<u>Duke Power</u>, on which Plaintiff also relies -- and which was
considered by the Ninth Circuit in <u>Bay View</u> -- similarly addresses
the availability of declaratory relief only where the prospective
damage wrought by the taking is "potentially uncompensable."  438
U.S. at 71 n.15.

12

United States District Court
For the Northern District of California

1    plurality opinion in <u>Eastern Enterprises</u> does not apply to this

2    case.

3        For these reasons, the Court concludes that it lacks

4    jurisdiction to adjudicate Plaintiff's takings claim against the

5    United States.  Plaintiff's claim will not be ripe until he has

6    first sought compensation under the Tucker Act.

7    II.  The City Defendants' Motion

8        A.   Takings Claim

9        Like the FWS, the City Defendants argue that Plaintiff's

10   takings claim against them is not ripe for review.  In order to

11   determine whether a takings claim against a defendant other than

12   the United States is ripe for adjudication in federal court, the

13   court performs a two-pronged inquiry: "The plaintiff must have

14   obtained a final decision from the governmental authority charged

15   with implementing the regulations and must have pursued

16   compensation through state remedies unless doing so would be

17   futile."  <u>Hacienda Valley Mobile Estates v. City of Morgan Hill</u>,

18   353 F.3d 651, 655 (9th Cir. 2003) (citing <u>Williamson County</u>

19   <u>Regional Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 186

20   (1985)).[3]

21       In <u>Williamson County</u>, the Supreme Court addressed a takings

22

23       [3]The "final decision" requirement does not apply to claims
24   challenging an ordinance as a taking on its face because, by
     definition, such claims "derive from the ordinance's enactment, not
     any implementing action on the part of governmental authorities."
25   <u>Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura</u>,
     371 F.3d 1046, 1052 (9th Cir. 2004).  It is not clear whether
26   Plaintiff intends to assert a facial or an as-applied challenge to
     the affordable housing and tiger salamander mitigation
27   requirements.  In any event, because the Court concludes that the
     "final decision" requirement has been met here, the facial/as-
28   applied distinction is not material.

13

**United States District Court**
For the Northern District of California

claim brought against a planning commission that had denied the plaintiff approval of its proposed development project.  After the denial, the plaintiff "did not then seek variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations." Williamson County, 473 U.S. at 188.  The Court held that, because the plaintiff had "not yet obtained a final decision regarding how it will be allowed to develop its property," id. at 191, the government's action was not yet ripe for review, id. at 194.

Here, the Planning Commission approved Plaintiff's permit with the challenged conditions on January 28, 2008.  The City Defendants note that, although the Cotati Municipal Code provides that a Planning Commission's decision must be appealed to the city council within ten days of the date of the decision, Plaintiff did not do so, but instead protested the conditions on his permit in a letter dated April 1, 2008.  The City Defendants argue that, because Plaintiff did not appeal the January 28 decision to the city council, the decision was not final and his takings claim must be dismissed.[4]

It is notable that the City Defendants assert that Plaintiff gave up his right to challenge the Commission's decision by not appealing it within ten days.  Thus, even according to the City Defendants, there are no remaining avenues that Plaintiff may

---

[4]Plaintiff argues that, pursuant to the California Mitigation Fee Act, he had ninety days to protest the conditions.  The Court need not determine the validity of this argument because it concludes that Plaintiff has obtained a final decision on his permit application.

14

pursue at the administrative level that could result in the conditions being removed from his permit.  This distinguishes the present case from Williamson County.  The City's decision is "final" because Plaintiff has been told how he will be allowed to develop his property.  The decision is therefore ripe for judicial review.

In arguing that Plaintiff's takings claim should be dismissed because he did not appeal the Planning Commission's decision to the city council, even though such an appeal is admittedly unavailable at this time, the City Defendants essentially ask the Court to impose a requirement that Plaintiff exhaust administrative remedies prior to bringing this suit.  "The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable."  Id. at 192.  Neither Williamson County nor any other binding case cited by the City Defendants imposes an exhaustion requirement similar to the one they advocate.  Williamson County simply requires that an individual in Plaintiff's position wait to bring a takings claim until the governmental entity charged with implementing the legal requirements at issue has reached a final decision regarding the application of the requirements to the property.  See id. at 186.

The question of whether Plaintiff has satisfied the second requirement of the ripeness test -- that he have sought compensation through state remedies -- is a different matter.  This prong is founded on the same principle that requires Plaintiff to seek compensation under the Tucker Act prior to bringing his claim against the FWS.  As the Supreme Court stated in Williamson County:

United States District Court
For the Northern District of California

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process yield[s] just compensation, then the property owner has no claim against the Government for a taking. Thus, . . . if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 194-95 (citations and internal quotation marks omitted). Therefore, a plaintiff "cannot bring a section 1983 action in federal court until the state denies just compensation." Levald, Inc., v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993); see also Ventura Mobilehome, 371 F.3d at 1053 (affirming dismissal for lack of jurisdiction where a takings claim was not ripe because the plaintiff had not filed suit for damages in state court).

Plaintiff does not allege that he sought and was denied compensation in state court, nor has he shown that doing so would be futile. Rather, he argues that the requirement of seeking compensation before filing a takings claim does not apply to claims seeking equitable relief. But, based on the rationale in Williamson County and as discussed above with respect to the FWS's motion, equitable relief is not available on Plaintiff's takings claim because the Fifth Amendment would not prevent the City Defendants from taking Plaintiff's property if they were to provide just compensation for it. Plaintiff has not cited any binding authority holding that a plaintiff may avoid the requirement of seeking compensation through state remedies by seeking equitable

relief in a federal action.  To the contrary, even though <u>Bay View</u>
addresses takings claims that seek equitable relief against the
United States, its rationale applies with equal force to takings
claims against state or local governments where an avenue for
obtaining compensation is available.  In support of his position,
Plaintiff relies primarily on the dicta in <u>Duke Power</u>, discussed
above, suggesting that the Tucker Act does not preclude district
courts from issuing a declaratory judgment in a takings case before
potentially uncompensable damages are sustained.  But again, the
Ninth Circuit has found this passage from <u>Duke Power</u> to be
inconsistent with subsequent Supreme Court authority and has not
treated it as binding, at least with respect to claims where an
avenue for obtaining compensation is available.  <u>See Bay View</u>, 105
F.3d at 1286 n.6.

Plaintiff also cites <u>San Remo Hotel, L.P. v. City and County
of San Francisco</u>, 545 U.S. 323 (2005), in which the Supreme Court
noted that the petitioners "were never required to ripen the heart
of their complaint -- the claim that the Hotel Conversion Ordinance
was facially invalid because it failed to substantially advance a
legitimate state interest -- in state court." <u>Id.</u> at 345-46.
However, this sentence refers to what was formerly recognized as an
exception to the second ripeness requirement: A plaintiff was not
required to seek compensation prior to bringing a takings claim
under a theory that the government's action was an unconstitutional
exercise of governmental power because it did not substantially
advance a legitimate governmental interest.  <u>See Ventura
Mobilehome</u>, 371 F.3d at 1053-54.  This was because such a claim
"does not depend on the extent to which the [plaintiff] was

17

United States District Court
For the Northern District of California

compensated," but rather is based on the assertion that the government lacked constitutional authority to effect the taking, "regardless of any compensation that might be offered." Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 966 (9th Cir. 2003). However, in Lingle v. Chevron U.S.A., Inc., 544 U.S. 528 (2005), the Supreme Court clarified that no takings claim could be based on the failure of a statute or regulatory scheme substantially to advance a legitimate governmental interest, and that the appropriate vehicle to challenge land use regulations as arbitrary and irrational is a substantive due process claim.[5] Id. at 540; see also Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1024-26 (9th Cir. 2007). Because the exception identified in San Remo Hotel applies to a type of claim that Plaintiff does not assert[6] -- and, in fact, one that no longer exists -- Plaintiff may not rely on the exception.

The Court concludes that Plaintiff's takings claim against the City Defendants is not ripe for review because he has not attempted to seek compensation through state remedies.

B.   Substantive Due Process Claim

As noted above, the "arbitrary and irrational deprivation of real property" may form the basis of a substantive due process claim. Action Apartment Ass'n, 509 F.3d at 1025. As a preliminary

---

[5]As discussed below, Plaintiff does assert a substantive due process claim based on the failure of the affordable housing plan substantially to advance a legitimate state interest. The City Defendants do not move to dismiss that claim on the basis that Plaintiff has not sought compensation through state remedies.

[6]A takings claim may still be asserted for the taking of one's property by the government for private, rather than public, use. See Action Apartment Ass'n, 509 F.3d at 1023-24.

**United States District Court**
For the Northern District of California

matter, contrary to Plaintiff's assertion, the Supreme Court in
<u>Lingle</u> did not hold that a "government action or law affecting
rights in property that fails to substantially advance a legitimate
state interest violates the Due Process Clause."  Pl.'s Opp. at 17.
This formula describes the standard for the type of takings claim
that many courts believed existed before the <u>Lingle</u> decision was
issued.   In fact, the Supreme Court in <u>Lingle</u> specifically
disapproved of the "substantially advance" language because it "can
be read to demand heightened means-ends review of virtually any
regulation of private property." <u>Lingle</u>, 544 U.S. at 544.  Such a
review "would require courts to scrutinize the efficacy of a vast
array of state and federal regulations -- a task for which courts
are not well suited."  <u>Id.</u>  The Supreme Court has "long eschewed
such heightened scrutiny when addressing substantive due process
challenges to government regulation," <u>id.</u> at 545, because "the Due
Process Clause does not empower the judiciary to sit as a
superlegislature to weigh the wisdom of legislation," <u>Exxon Corp.</u>
<u>v. Governor of Maryland</u>, 437 U.S. 117, 124 (1978).  Thus, instead
of proceeding under the "substantially advances" standard Plaintiff
proposes, he must instead show that the affordable housing
ordinance is not rationally related to any legitimate governmental
objective.  <u>See</u> <u>Lingle</u>, 544 U.S. at 542; <u>Crown Point Development,</u>
<u>Inc. v. City of Sun Valley</u>, 506 F.3d 851, 856 (9th Cir. 2007).
This is an extremely deferential standard of review.   <u>See</u> <u>Equity</u>
<u>Lifestyle Props., Inc. v. County of San Luis Obispo</u>, 505 F.3d 860,
871 (9th Cir. 2007).

     The City's affordable housing ordinance states that its
purpose is to "[e]ncourage the development and availability of

housing affordable to a broad range of households with varying income levels within the City"; to "[o]ffset the demand on housing created by new development, and mitigate environmental and other impacts that accompany new development by protecting the economic diversity of the City's housing stock, reducing traffic, transit and related air quality impacts, promoting jobs/housing balance and reducing the demands placed on transportation infrastructure in the region"; and to "[i]mplement the policies of the Housing Element of the General Plan."  Compl. Ex. A at § 17.31.010.  There is no serious question that these are legitimate governmental objectives. See Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1236 (9th Cir. 1994) (noting that "preserving the agricultural heritage of the City, providing for a range of housing types and densities, preserving the 'small town' character of the City, and limiting development within the City to levels consistent with available resources" were all legitimate governmental objectives); Kamaole Pointe Dev. LP v. County of Maui, ___ F. Supp. 2d ___, 2008 WL 2622819, at *23 (D. Haw.) ("[T]he Ordinance addresses a clearly legitimate governmental objective -- namely, to provide affordable housing to Maui's workforce in a climate where such housing is increasingly scarce.").  Plaintiff's assertion that "[f]orcing one small group of individuals to subsidize the housing of another small group of individuals is not a legitimate government interest," Compl. ¶ 48, conflates the City's objectives with the means of achieving those objectives.  Its primary objective -- an increase in the amount of affordable housing -- cannot be said to have to have no relationship to "the public health, safety, morals, or general welfare."  Village of Euclid v. Ambler Realty Co., 272

U.S. 365, 395 (1926).

As for the means employed by the City, it was not clearly irrational or arbitrary for the City to determine that a combination of set-asides, new construction, land dedication, and payment of in-lieu fees would result in the creation of more housing accessible to low- and moderate-income residents.  The affordable housing plan, as described in the complaint, therefore does not violate Plaintiff's substantive due process rights.

Plaintiff argues that a finding that the City's affordable housing plan is not arbitrary and irrational would be premature, and that such a finding is not possible if the Court accepts the allegations in the complaint as true.  However, the Court need only accept the material <u>facts</u> in the complaint as true for the purposes of this motion.  It need not accept as fact what are actually arguments, legal conclusions or Plaintiff's personal views on economic matters.  <u>See</u> <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  The complaint's description of the challenged aspects of the affordable housing plan is sufficient to enable the Court to determine, without a fuller record, that the plan is not clearly irrational.  The Court need not wait to consider expert testimony on the economic disincentives that Plaintiff asserts the plan creates for new housing development, because the Court need not determine whether the plan is the wisest means of increasing the amount of affordable housing in the City.  Indeed, such a determination would require the Court to substitute its judgment for the city council's, and is thus beyond the permissible scope of its review.  <u>See</u> <u>Exxon</u>, 437 U.S. at 124.

United States District Court
For the Northern District of California

C.   Equal Protection Claim

The Fourteenth Amendment provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Because Plaintiff does not allege that he is a member of a protected class, he can succeed on his equal protection claim only by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  "Disparate government treatment will survive rational basis scrutiny 'as long as it bears a rational relation to a legitimate state interest.'" Id. (quoting Patel v. Penman, 103 F.3d 868, 875 (9th Cir. 1996)).

The allegations in the complaint do not establish that Plaintiff has been treated differently from similarly situated individuals, let alone in an irrational manner.  Plaintiff does not allege, for example, that he has been treated differently than other developers with similar project proposals.  His claim appears to be based on his view that developers are being forced to subsidize housing for low- and moderate-income individuals, whereas other taxpayers are not.  But individuals pursuing development projects are not situated similarly to other taxpayers, in that they are in a unique position to create affordable housing.  And, as explained above, requiring this group to set aside twenty percent of new housing for low- and moderate-income individuals is rationally related to the City's interest in increasing the amount of affordable housing within its limits.

22

Plaintiff's situation is not comparable to that of the plaintiff in <u>Village of Willowbrook</u>, the only case he cites in support of his position.  There, the complaint was "construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting [the plaintiff's] property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners."  528 U.S. at 565.  Plaintiff simply does not allege that he was singled out for treatment that differed in any way from the treatment of those who were situated similarly to him.  Accordingly, he has not stated a cognizable equal protection claim.

D.   Mitigation Fee Act Claim

The Mitigation Fee Act, California Government Code §§ 66000 <u>et seq.</u>, was enacted "in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects."  <u>Ehrlich v. City of Culver City</u>, 12 Cal. 4th 854, 864 (1996).  In the complaint, Plaintiff contends that the affordable housing and tiger salamander mitigation requirements violate § 66001 of the Act.  This section provides in relevant part:

> (a) In any action establishing, increasing, or imposing a fee as a condition of approval of a development project by a local agency, the local agency shall do all of the following:
>
> . . .
>
> > (3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed.
> >
> > (4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed.

United States District Court
For the Northern District of California

      (b) In any action imposing a fee as a condition of approval of a development project by a local agency, the local agency shall determine how there is a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed.

Cal. Gov't Code § 66001.[7]   The Act defines a "fee" as:

      a monetary exaction other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project.

Id. § 66000(b).

      Although § 66001 on its face simply imposes procedural requirements on local agencies -- i.e., that they make certain determinations -- California courts appear to permit claims against local agencies for violations of § 66001, not just on the basis that the agency failed to make the required determinations, but also on the basis that the fee in question is not reasonably related to the cost of the public facilities for which it is charged.   See, e.g., Ehrlich, 12 Cal. 4th at 864-65.

      Plaintiff cannot base a Mitigation Fee Act claim on § 66001 because he does not challenge the City's imposition of a "fee." First, the tiger salamander mitigation and affordable housing requirements are not "monetary exactions."   They do not require

---

    [7]Plaintiff correctly notes that, in Ehrlich, the California Supreme Court determined that the "reasonable relationship" language should be viewed through the lens of Fifth Amendment takings jurisprudence.   By interpreting the Mitigation Fee Act as requiring that development fees satisfy the takings clause, "a development fee imposed pursuant to the act . . . will not be subject to challenge on constitutional grounds."   Ehrlich, 12 Cal. 4th at 867.

that Plaintiff pay the City for the right to develop his land. Rather, they require that he use his land in a particular way. That Plaintiff may, at his election, choose to pay a fee in lieu of satisfying the conditions does not render the conditions themselves fees. Second, even if Plaintiff chose to pay the in-lieu fees, they are not exacted for "the purpose of defraying all or a portion of the cost of public facilities related to the development project." Such payments therefore would not qualify as "fees" under § 66000 and would not be subject to the requirements of § 66001. See Centex Real Estate Corp. v. City of Vallejo, 19 Cal. App. 4th 1358, 1364 (1993) (holding that a property development excise tax was not a "fee" within the meaning of the Mitigation Fee Act because it was "imposed to raise revenue for the City's general fund and not for the limited purpose of funding public facilities or services related to a new development"); Williams Commc'ns, LLC v. City of Riverside, 114 Cal. App. 4th 642, 658 (2004) ("We agree with the trial court's conclusion that the $750,103 was not a fee within the meaning of this definition because it was not assessed for the purpose of defraying the cost of Williams's project.").

In opposing the City Defendants' motion, Plaintiff apparently concedes that the conditions imposed on his development are not "fees" under the Mitigation Fee Act. Instead, he argues that the conditions are "exactions" that may be challenged under other provisions of the Act, notwithstanding that the complaint cites only § 66001. Specifically, he refers to § 66020, which provides:

> Any party on whom a fee, tax, assessment, dedication, reservation, or other exaction has been imposed, the payment or performance of which is required to obtain governmental approval of a development . . . or development project, may protest the establishment or

United States District Court
For the Northern District of California

imposition of the fee, tax, assessment, dedication, reservation, or other exaction as provided in Section 66020.

Cal Gov't Code § 66021(a) (emphasis added).  Section 66020, in turn, provides:

(a) Any party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a development project . . . by a local agency by meeting both of the following requirements:

(1) Tendering any required payment in full or providing satisfactory evidence of arrangements to pay the fee when due or ensure performance of the conditions necessary to meet the requirements of the imposition.

(2) Serving written notice on the governing body of the entity,

(A) A statement that the required payment is tendered or will be tendered when due, or that any conditions which have been imposed are provided for or satisfied, under protest.

(B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest.

Id. § 66020(a) (emphasis added).  This section continues:

Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a development project by a local agency within 180 days after the delivery of the notice.

Id. § 66020(d)(2).[8]

_____

[8]In his opposition, Plaintiff also cites another section of the Act providing, "When a local agency imposes any fee or exaction as a condition of approval of a proposed development . . . or development project, those fees or exactions shall not exceed the estimated reasonable cost of providing the service or facility for which the fee or exaction is imposed."  Cal. Gov't Code § 66005(a). Plaintiff does not explain how this section, which, like § 66001, applies only to fees or monetary exactions imposed to mitigate the cost of providing services or facilities, applies to his claim.

United States District Court
For the Northern District of California

Even assuming that the challenged conditions are exactions,[9] these provisions of the Mitigation Fee Act simply provide a procedure by which the conditions may be challenged.[10]  They do not provide an independent basis for evaluating the lawfulness of the exactions.  See Williams, 114 Cal. App. 4th at 658 (interpreting "other exaction" to include "any unlawful charge" and permitting the plaintiff to recover charges in excess of the reasonable cost of providing the services for which the charges were imposed; such excess charges were independently unlawful under Government Code § 50030).  The only basis Plaintiff identifies for concluding that the conditions of his permit are unlawful, other than that they violate § 66001, is that they violate the takings clause of the Fifth Amendment; except as discussed above, he has not alleged that the conditions violate a specific provision of the Mitigation Fee Act.  But Plaintiff's takings claim is not ripe for review because he has not sought compensation through mechanisms provided by the

_____

[9]In Fogarty v. City of Chico, 148 Cal. App. 4th 537 (2007), the court found that "exactions" do not include "land use restrictions, which are not any form of payment," but rather encompass conditions which, like the other terms in § 66020, "involve divesting a developer of either money or a possessory interest in the subject property."  Id. at 543-44.  The conditions imposed on Plaintiff's permit do not divest him of either money or a possessory interest in his land.  Rather, they are akin to land use restrictions, and thus are not exactions under Fogarty.

[10]The California Supreme Court has interpreted the language of § 66020 as expressing the legislature's intent "to require all protests to a development fee that challenge the sufficiency of its relationship to the effects attributable to a development project -- regardless of the legal underpinnings of the protest -- to be channeled through the administrative procedures mandated by the Act.  Such claims would encompass not only statutory grounds, but contentions that a given imposition offends the commands of the takings clause of the Fifth Amendment."  Ehrlich, 12 Cal. 4th at 866.  Although the parties dispute whether Plaintiff has complied with the Act's requirements, the Court need not reach the issue.

**United States District Court**
For the Northern District of California

state.  Plaintiff has not cited any authority for the proposition that the Mitigation Fee Act, simply by providing a procedure by which he may challenge an exaction as unlawful, supplies the Court with a basis to adjudicate his unripe takings claim.

For these reasons, Plaintiff has not stated a claim under the Mitigation Fee Act.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.[11]  Plaintiff's takings claim against the U.S. Fish and Wildlife Service is dismissed without prejudice to re-filing after he has first sought compensation for the alleged taking under the Tucker Act.  Likewise, his takings claim against the City of Cotati and the Planning Commission of the City of Cotati is dismissed without prejudice to re-filing after he has first sought compensation for the alleged taking by pursuing state remedies. Because the basis for dismissing this claim is equally applicable to the takings claim against Defendant Donald Koch, the claim against Mr. Koch is dismissed as well.  See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.")  Plaintiff's substantive due process, equal protection and Mitigation Fee Act claims are dismissed without prejudice to filing an amended

---

[11]The Court denies as moot the City Defendants' requests for judicial notice.  In ruling on this motion, the Court did not rely on any documents other than those that were attached to the complaint.

complaint alleging, if he can truthfully do so, facts sufficient to overcome the deficiencies identified in this order.[12]

Any amended complaint must be filed within ten days of the date of this order.  If no amended complaint is filed, the clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 11/19/08

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

_____

[12]The complaint asserts that the Court has supplemental jurisdiction over Plaintiff's Mitigation Fee Act claim pursuant to 28 U.S.C. § 1367(a).  If Plaintiff does not seek to amend the claims over which the Court has federal question jurisdiction but chooses to amend his Mitigation Fee Act claim, the Court will decline to exercise supplemental jurisdiction over the claim.  See 28 U.S.C. § 1367(c)(3).